UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80652-CIV-RYSKAMP/VITUNAC

SFM HOLDINGS, LTD.,

    Plaintiff,

v.

BANC OF AMERICA SECURITIES, LLC,

    Defendant.

_____/

**ORDER GRANTING BANC OF AMERICA SECURITIES, LLC'S
MOTION TO DISMISS AND CLOSING CASE**

THIS CAUSE comes before the Court pursuant to Defendant Banc of America Securities, LLC's ("Banc of America") Motion to Dismiss, or, Alternatively, to Transfer to the United States District Court for the Southern District of New York, filed September 1, 2006 **[DE 16]**. Plaintiff SFM Holdings, Ltd. responded on October 4, 2006 **[DE 24]**. Banc of America Securities, LLC replied on October 18, 2006 **[DE 22]**. This motion is ripe for adjudication.

**I.    BACKGROUND:**
**Dr. Salomon Melgen and SFM Holdings, Ltd.'s Litigious History**

SFM Holdings, Ltd. ("SFM") is one of 178 investors defrauded in one of the largest securities fraud cases in Florida history, <u>SEC v. KL Group, et al.</u>, Case No. 05-80186-CIV-RYSKAMP/VITUNAC, in which KL Group, LLC's ("KL Group") principals traded away and stole more than $165 million of investors' money. John Kim ("Kim") and Won Lee ("Lee") have been indicted for their roles in the alleged fraud. See <u>United States v. Jung Bae Kim, et al.</u>, Case No. 06-80197-CR-RYSKAMP/HOPKINS.

2

Dr. Salomon Melgen ("Dr. Melgen") is the president and general partner of SFM. Dr. Melgen and SFM have filed a total of three actions, one in state court and two in federal court, seeking to recover their lost investment. The Court elects to take judicial notice of the complaints filed in the state court action for the purpose of reviewing in detail the allegations in each of the three suits.[1] Such an examination is necessary as Banc of America has moved to dismiss the above-styled case on the grounds of judicial estoppel.

On February 28, 2005, SFM and Dr. Melgen filed <u>SFM Holdings, Ltd. and Salomon Melgen v. John Kim, Shoreland Trading, LLC, Won Lee, KL Group, LLC and Banc of America</u>, Case No. 50-2005CA 001891 AD, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. The initial Verified Complaint alleges that Dr. Melgen and SFM had invested $12.3 million in an account at Banc of America. (Verified Complaint, 7,9.)[2] At some time prior to the opening of the account, Dr. Melgen executed a Prime Broker Margin Account Agreement that established the terms of the parties' relationship. (Anello Decl. Ex. A.)[3] (The account may or may not have been designated as a Shoreland Trading account; the Verified

---

[1] Pursuant to Rule 201(b) of the Federal Rules of Evidence, the Court may take judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201(d) states that the Court "*shall* take judicial notice if requested by a party and supplied with the necessary information." (Emphasis added.) The state court pleadings are matters of public record. See <u>Cash Inn of Dade, Inc. v. Metro. Dade County</u>, 938 F.2d 1239, 1243 (11th Cir. 1991) (judicial notice of public records appropriate); <u>Ubuy Holdings, Inc. v. Gladstone</u>, 340 F.Supp.2d 1343, 1346 (S.D. Fla. 2004) ("A district court may . . . take judicial notice of public records") (citation omitted). In taking judicial notice of the pleadings in the state court action, the Court makes no ruling as to the truth or falsity of the allegations contained therein.

[2] Although named as a defendant, Banc of America was never served with the complaint and has been treated as a third-party witness.

[3] The Prime Broker Agreement and the complaints in the state court action are attached to a declaration filed by Robert J. Anello, Esq., one of Banc of America's counselors. SFM has filed a separate motion to strike this declaration on the grounds that it contains hearsay and conclusory statements. The Court relies on the declaration only insofar as it attaches the complaints in the state court action and the Prime Broker Margin Account Agreement. SFM does not dispute the authenticity of any of these documents, and even relies on the Prime Broker Margin Account Agreement in its response. The Court thus takes judicial notice of the Prime Broker Margin Account Agreement.

Complaint does not explicitly specify.  Either way, it is evident that Kim had some type of authority over this account.)  (Verified Complaint, 8-9.)  To induce Dr. Melgen to leave his investment in place at a time when he intended to withdraw the funds, Shoreland Trading and Kim provided Dr. Melgen with a written guaranty of his principal.  (Verified Complaint, 8.)  Kim and Lee also promised in writing that the funds in Shoreland Trading would be held in a segregated account under Dr. Melgen's name and that no one but Dr. Melgen would be able to make withdrawals from the account.  (Verified Complaint, 8.)  Pursuant to these promises, Dr. Melgen on November 2, 2004 authorized via written letter a transfer to the Shoreland Trading Prime Brokerage account, also at Banc of America.  (Verified Complaint, 9; Verified Complaint, Ex. C.)  The letter provides as follows:

> The instruction contained in this letter is to facilitate the transfer of my account from Banc of America Prime Brokerage to Wedbush Morgan Securities.  Please transfer all equity and all stock positions in my Banc of America Prime Brokerage account, Account No. 1180***to Shoreland Trading prime brokerage account, Account No. 11801147. It is my understanding that the positions and funds will then be transferred to Wedbush Morgan Securities.
>
> If you have any questions, please contact me or Won Lee.
>
> Sincerely,
> Dr. Sal Melgen
> SFM Holdings Ltd.

As the letter provides, the account eventually was to be transferred to Wedbush Morgan Securities ("Wedbush") to be held in a segregated account under Dr. Melgen's name.  (Verified Complaint, 11.)  On February 25, 2005, Dr. Melgen learned that the funds he invested in Shoreland Trading, along with other funds invested in KL Trading, LLC, an amount totaling

4

approximately $20 million, had been stolen.  (Verified Complaint, 16.)  Dr. Melgen and SFM filed a five count action days later.  Count I seeks damages for breach of the guaranty, Count II, a claim for fraudulent transfer, seeks an interest in real property that it is now part of the Receivership Estate, Count III seeks damages for an alleged conversion conspiracy, Count IV seeks a writ of attachment pursuant to Fl. Stat. § 76.01 on real property that is now part of the Receivership Estate, and Count V seeks imposition of an equitable trust on assets that are now part of the Receivership Estate.

On November 11, 2005, Dr. Melgen and SFM filed an unsworn Amended Complaint in the state court action.  This pleading alleges that Dr. Melgen, as general partner of SFM, owned an investment account at Banc of America over which Kim had managerial authority.  (Amended Complaint, 7-8.)  At some time prior to the opening of the account, Dr. Melgen executed a Prime Broker Margin Account Agreement that established the terms of the parties' relationship.  (Anello Decl. Ex. A.)  The account suffered losses, and Dr. Melgen advised Kim that he would be closing the account.  (Amended Complaint, 9.)  To induce Dr. Melgen to keep his investment in the account, Kim provided Dr. Melgen with a written guaranty of his principal.  (Amended Complaint, 10-11.)  Subsequently, Kim persuaded SFM to transfer the assets to the Wedbush account.  (Amended Complaint, 13.)  Dr. Melgen authorized the transfer orally and in writing.  (Amended Complaint, 13-14.)  Kim did not open the Wedbush account, however.  (Amended Complaint, 15.)  Rather, Lee gave Banc of America a letter dated November 2, 2004 directing it to transfer the assets to the Shoreland Trading account.  (Amended Complaint, 16.)  Dr. Melgen maintained for the first time in the Amended Complaint that the letter is a forgery.  (Amended Complaint, 17.)  Lee then transferred the assets to Wedbush, where they were held in the name of

Shoreland Trading.  (Amended Complaint, 19.)  Dr. Melgen learned on February 25, 2005 that the funds had been stolen.  (Amended Complaint, 21.)  The Amended Complaint alleges only two counts:  Count I seeks damages for breach of the guaranty, and Count II seeks imposition of a constructive trust on assets now part of the Receivership Estate.  The Receiver has moved to dismiss this action on the grounds that it violates this Court's order enjoining suits against Receivership entities and Receivership property.[4]

SFM filed the instant action on June 6, 2006.  This action stems from the same set of facts, yet SFM now alleges securities fraud and tort claims against Banc of America.[5]

Dr. Melgen claims that he opened the account at Banc of America on behalf of SFM by signing Banc of America documentation he received from a Kim employee.  (Complaint, 18.)  The employee returned the documents to Lee, who gave them to Banc of America.  (Complaint, 18.)  Dr. Melgen executed a Prime Broker Margin Account Agreement that established the terms of the parties' relationship.  (Anello Decl. Ex. A.)  Neither Dr. Melgen nor any officer or employee of SFM ever met or spoke with an employee of Banc of America.  (Complaint, 19.)  Dr. Melgen believed Kim was Banc of America's agent.  (Complaint, 21.)

SFM initially funded the account with $10 million on September 28, 2004.  Dr. Melgen contributed an additional $2.3 million on October 5, 2004.  Kim later transferred another $2.7 million of SFM funds to the account.  (Complaint, 22.)

---

[4] See SEC v. KL Group, LLC, et al., Case No. 05-80186, Receivership Case Management Order, July 18, 2005 **[DE 105]**, p. 9.

[5] The Court assumes these allegations are true only for the purpose of adjudicating the motion to dismiss. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir. 1993)).

6

SFM alleges that Kim and Lee engaged in disastrous trading in the account in the month of October. Pursuant to Lee's request, Banc of America increased the margin to 3.5 times equity. SFM claims it did not agree to the increase and would not have so agreed had its consent been sought. (Complaint, 40.) Immediately thereafter, on October 11, 2004, either Lee or Kim made a large illegal trade, selling Travel Zoo short without arranging to borrow the stock first. (Complaint, 41.) SFM would not have authorized the transaction had it been notified of same. (Complaint, 41.) Banc of America discovered the trade the next day and demanded that Lee cover the trade. Banc of America also confirmed that Lee had deliberately circumvented its system to make the trade. On October 13, Banc of America discovered that on October 12, Lee or Kim had again illegally sold Travel Zoo short by circumventing the system. Banc of America also knew that Lee had not immediately covered the illegal short position on October 12. On October 13, Banc of America ordered Lee to take all of his accounts, including the account in the name of SFM, out of Banc of America. (Complaint, 42-45.) Banc of America nevertheless allowed Shoreland Trading to continue trading at Banc of America for more than four weeks thereafter. (Complaint, 47.)

Aware that the account was suffering losses, Dr. Melgen advised Kim that he would be closing the account. (Complaint, 23.) Kim provided Dr. Melgen with a written guaranty of principal to induce him to leave the money in the account. (Complaint, 24.)

On November 2, 2004, Lee provided Banc of America a letter signed by Dr. Melgen instructing that the assets be transferred to Shoreland Trading. (Complaint, 25-26.) SFM maintains that this letter is a forgery. Banc of America negligently and recklessly accepted the letter, and, without any effort to confirm its authenticity, verify the directions it purported to

7

convey or inquire into Lee's authority, transferred assets worth more than $15 million to the Shoreland Trading account. (Complaint, 27.)

Within two weeks of the transfer to Shoreland Trading, Lee transferred the assets to the Wedbush account, where they were held solely in the name of Shoreland Trading. (Complaint, 29.) Shoreland Trading withdrew $2 million from the account at Wedbush, and most of the remaining assets were lost in bad trades. (Complaint, 30.) The remainder of the account, approximately $1 million, is now part of the Receivership Estate. (Complaint, 30.)

SFM brings a four count complaint against Banc of America. Count I is a claim for damages for violation of Section 10b-5 of the Securities and Exchange Act of 1934 and SEC Rule 10b-5. Count II is a claim for violation of Fl. Stat. § 517.301, the Florida Securities Investor Protection Act ("FSIPA"). Count III alleges breach of fiduciary duty, and Count IV alleges constructive fraud.

On August 21, 2006, SFM filed a second federal lawsuit, <u>SFM Holdings, Ltd. v. John Kim, Shoreland Trading, LLC, Won Lee, Yung Kim and Guy Lewis, Esq. as Receiver for Shoreland Trading, LLC,</u> Case No. 06-80801-RYSKAMP, seeking to recover the investment from assets comprising the Receivership Estate.[6] The allegations of the second federal lawsuit mirror those of the Amended Complaint in the state court action: SFM claims the November 2, 2004 letter was forgery, but that Dr. Melgen authorized transferred to Wedbush. The same counsel represents Dr. Melgen and SFM in each of these actions.

---

[6]The Receiver has moved to dismiss this action on the grounds that it violates the injunction in the Receivership Case Management Order.

## II. DISCUSSION

A.  **The Doctrine of Judicial Estoppel does not Bar the Instant Action.**

The judicial estoppel doctrine prevents parties from "deliberately changing positions according to the exigencies of the moment." Barger v. City of Cartersville, Georgia, 348 F.3d 1289, 1293 (11th Cir. 2003) (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1284 (11th Cir. 2002)).  Application of the doctrine depends on several factors : (1) "whether the present position is 'clearly inconsistent' with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party." Burnes, 291 F.3d at 1285 (citing New Hampshire v. Maine, 532 U.S. 742, 750 (2001)).  Whether such inconsistencies have this purpose turns on the party's intent in asserting inconsistent positions and includes "purposeful contradiction" that can be "inferred from the record." Barger, 348 F.3d at 1293.  The test is "flexible" and requires a "consideration of all of the circumstances in a particular case." Id. at 1293.

SFM in the state court action initially alleged that Dr. Melgen authorized the transfers to Shoreland Trading and Wedbush.  Banc of America maintains that SFM should be judicially estopped from arguing in this action that the letter was a forgery.  Banc of America asserts that SFM only alleges that the letter is a forgery when it suits its interests: when SFM asserted a claim against the KL entities and their principals, it alleged that the letter was legitimate, but when SFM asserted a claim against Banc of America, it asserted that the letter was forged.  SFM explains that its initial allegation that the letter was legitimate was the result of its counsel's hasty

9

drafting of the Verified Complaint. Banc of America would like the Court to find that explanation incredible, but no evidence has been presented as to the authenticity of the letter, nor has the Court received evidence as to the circumstances surrounding the drafting of the Verified or Amended Complaints in the state court action.[7] The Court is unwilling to make such credibility determinations on a motion to dismiss. Accordingly, the motion to dismiss the Complaint on grounds of judicial estoppel is denied.

**B.    SFM Fails to State a Claim Against Banc of America.**

SFM has failed to state a claim against Banc of America pursuant to Rule 12(b)(6). Rule 8(a) of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." When examining a motion to dismiss, this Court considers whether the plaintiff has alleged facts sufficient to state a claim for relief. A motion to dismiss should not be granted unless the plaintiff can prove no set of facts in support of its claim entitling it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Usually, "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman, 225 F.3d at 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir. 1993)). Nevertheless, documents not attached to the pleadings but referenced therein may be considered on a motion to dismiss when the documents are central to the claim and their authenticity is not

---

[7] The Amended Complaint, alleging that the authorization was forged, is the operative complaint in the state court action, judicial estoppel notwithstanding.

in question. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).

SFM has failed to state a claim for securities fraud under both federal and state law. To assert a claim under Section 10b, SFM must establish: "(1) a false statement or omission of material fact 'in connection with' the purchase or sale of securities; (2) made with scienter; (3) upon which [SFM] justifiably relied; and (4) that proximately caused [SFM's] injury." See In re Saf T Lok, Inc. Sec. Litig., Case No. 02-80252, 2003 WL 22383607, at *5 (S.D. Fla. July 3, 2003) (quoting Robbins v. Koger Props., Inc., 116 F.3d 1441, 1446 (11th Cir. 1997). Pursuant to Rule 9(b), SFM must specify: "(1) what statements or omissions were made in which documents or oral presentation, (2) the time and place of the statement, as well as the person who made it, (3) the misleading content of the statement, and (4) what [Banc of America] gained as a consequence." Saf T Lok, 2003 WL 22383607, at *6 (quoting Brooks v. Blue Cross and Blue Shield of Florida, 116 F.3d 1364, 1371 (11th Cir. 1997)). The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4b, additionally requires SFM to allege: "(1) factual specificity as to the alleged misleading or omitted statements and (2) particular facts raising a strong inference that [Banc of America] acted with the required state of mind." In re Recoton Corp. Sec. Litig., 358 F. Supp. 2d 1130, 1138-39 (M.D. Fla. 2005). The basic elements for securities fraud claims under the Florida statute are the same, Gochnauer v. A.G. Edwards & Sons, Inc., 810 F.2d 1042, 1046 (11th Cir. 1987); Fla. Stat. § 517.301, however Florida law also requires allegations of buyer seller privity. See In re Checkers Secs. Litig., 858 F. Supp. 1168, 1180-81 (M.D. Fla. 1994).

The Complaint does not meet the requirement that the alleged misrepresentations or omissions were made "in connection with" the purchase or sale of securities.  In fact, SFM alleges that no direct contact existed between it and Banc of America.  SFM concedes in response that the complaint does fail to meet the "in connection with" requirement.[8]

SFM also fails to allege that Banc of America's reliance on the alleged forged transfer authorization was the result of any intent to deceive, manipulate or defraud.  Scienter is the mental state embracing an "intent to deceive, manipulate or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193-94 n.12 (1977).  Under the PSLRA, SFM must state with particularity the facts giving rise to a "strong inference" that Banc of America acted with scienter as to each and every claimed violation of Rule 10b-5.  See Phillips v. Scientific-Atlanta, Inc., 374 F.3d 1015, 1018 (11th Cir. 2004); In re Theragenics Corp. Sec. Litig., 105 F. Supp. 2d 1342, 1361-62 (N.D. Ga. 2000).  The Complaint attempts to allege scienter in that Banc of America's reliance on the "forged" letter of authorization "showed a reckless disregard" for SFM's rights, that Banc of America "recklessly failed to honor its duty to know its customer," and that Banc of America's failure "to disclose... material facts to [SFM]...show[ed] a reckless disregard of the risks to its customers." (Complaint, 27, 50, 32, 64.)  Although certain types of extremely "reckless" conduct may satisfy the scienter standard, courts have confirmed that this "recklessness" must be tantamount to knowing, intentional misconduct approximating an actual intent to aid in the fraud being perpetrated:

---

[8] Even if the Complaint could meet the "in connection with" requirement, the allegations amount to nothing more than an impermissible "aiding and abetting" claim. (Complaint, 8.)  "A private plaintiff may not maintain an aiding and abetting suit under § 10(b)." Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 167 (1994); Ziemba v. Cascade International, Inc., 256 F.3d 1194, 1204-05 (11th Cir. 2001) (defendant's alleging "significant role" in fraud is akin to impermissible aiding and abetting claim).

12

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involves not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or so obvious that the defendant must have been aware of it.

Id. at 1359-60.  The Complaint fails to offer any specifics about the alleged intentional wrongdoing on the part of Banc of America.  SFM simply fails to allege any facts suggesting that Banc of America knew the transfer was unauthorized, and SFM fails to take into account the Complaint's own allegations concerning Banc of America's efforts to investigate Shoreland Trading's short sales.

The Complaint also fails to allege causation.  SFM must "demonstrate reliance on a material misrepresentation or omission."  Gerrard v. Gerrard & Co., 285 F. Supp. 2d 1331, 1344 (S.D. Ga. 2003) (quoting Hall v. Coram Healthcare Corp., 157 F.3d 1286, 1288 (11th Cir. 1998)).  SFM has not alleged that it actually relied on Banc of America's alleged omissions.  To the contrary, the Complaint acknowledges that Dr. Melgen was aware that Shoreland Trading's action in the account led to losses, that both Shoreland Trading and Lee were involved with the account and that Dr. Melgen was aware of the transfer to Shoreland Trading.  SFM even elected to keep the money in the account after learning of its initial losses.

Finally, the Complaint fails to allege that Banc of America breached a fiduciary duty owed to SFM.  Here, the parties' Prime Brokerage Agreement states unequivocally that Banc of America was not "acting as a fiduciary," and was not "advising [SFM], performing any analysis, or... offer[ing] any opinion, judgment or other type of information pertaining to the nature, value, potential or suitability of any particular invest[ment]." (Anello Decl., ¶ 11(b)).  Banc of America

13

thus owed SFM no fiduciary duties and cannot be sued for alleged failure to disclose. Although SFM alleges that Dr. Melgen believed Kim to be Banc of America's agent, the language of the brokerage agreement clearly demonstrates that Banc of America owed SFM no fiduciary duty.

Disposition of the Florida securities fraud claim requires little additional analysis. While negligence is sufficient under the Florida statute, Checkers, 858 F. Supp. at 1180, SFM does not allege that Banc of America's reliance on Dr. Melgen's transfer instructions was inappropriate or that Banc of America should have known that the letter was "forged." In fact, the Prime Brokerage Agreement expressly states that Banc of America "may rely upon any... request...or other documents which [Banc of America] reasonably believe[s] to be genuine and transmitted by authorized persons." (Anello Decl. ¶ 10(f)).

SFM concedes that both securities fraud claims are deficient and seeks leave to replead them. This request is inconsistent with its acknowledgment that the complaint fails to satisfy the "in connection with" requirement. The instant Complaint is not one that warrants amendment. SFM's inability to satisfy the "in connection with" requirement follows from the underlying facts of this case-facts well known to SFM given its receipt of extensive third-party discovery in the state court action. See John v. Blackstock, 664 F. Supp. 1426, 1427-28 (M.D. Fla. 1987) (dismissing with prejudice for failure to plead "in connection with" requirement). SFM also requests leave to replead its state law claim to add a claim under "Section 517 .301(3)." No such section even exists in the current version of the law, however. To the extent that SFM intends to rely on current Section 517.301(1)(c), this section requires a showing that Banc of America "knowingly and willfully" committed a fraudulent act.

Counts III and IV, claims for constructive fraud and breach of fiduciary duty, also fail to state a claim. Central to both claims is the allegation that Banc of America was acting as SFM's fiduciary. Constructive fraud claims arise "when the duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken." American Honda Motor Co. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005) (quotation omitted). A claim for "constructive fraud will not lie where the parties are dealing at arm's length...or in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." Id. (quotation omitted); Lanz v. Resolution Trust Corp., 764 F. Supp. 176, 179 (S.D. Fla. 1991). Given the plain language in the Prime Brokerage Agreement, SFM cannot satisfy this requirement. The language in the Prime Broker Agreement is similarly fatal to the claim for breach of fiduciary duty. See Eclipse Med., Inc. v. Am. Hydro–Surgical Instruments, Inc., 262 F. Supp. 2d 1334, 1349 (S.D. Fla. 1999) (dismissing breach of fiduciary claim where parties' agreement disavowed existence of fiduciary relationship); Amoco Oil Co. v. Gomez, 125 F. Supp. 2d 492, 509 (S.D. Fla. 2000) (same); Burger King Corp. v. Austin, 805 F. Supp. 1007, 1020 (S.D. Fla. 1992) (same). SFM attempts to characterize Banc of America as its fiduciary because it was its "bailee," but such was not alleged in the Complaint, nor does such eradicate the significance of the language in the Prime Broker Agreement.

The tort claims are also barred by the application of the economic loss rule, which provides that parties to a contract can only seek tort damages if the alleged tortious conduct constitutes a tort distinct from the parties' contractual rights and obligations. See Jones v. Childers, 18 F.3d 899, 904 (11th Cir. 1994). See also Mount Sinai Medical Center of Greater

Miami, Inc. v. Heidrick & Struggles, Inc., 03 Civ. 20256, 2006 WL 1914587, at *2 (11th Cir. July 12, 2006) (dismissing tort claim pursuant to economic loss rule where allegations concerned breach of contract); Targia v. U.S. Alliance Corp., 02 Civ. 23055, 2003 WL 23312749, at *2 (S.D. Fla. Nov. 14, 2003) (applying economic loss rule to bar tort claims even where breach of contract claim not asserted); Royal Surplus Lines Ins. Co. v. Coachman Indus., Inc., 01 Civ. 00301, 2006 WL 1674261, at *8 (11th Cir. June 19, 2006) (tort claims barred because insurance contracts governed parties' relationship).  Here, the parties' relationship was governed by the Prime Brokerage Agreement, and SFM's alleged grievances stem from Banc of America's alleged oversight as to an account created pursuant to that agreement.  The caselaw SFM cites is not to the contrary.  Moransais v. Heathman, 744 So.2d 973, 979-84 (Fla.1999) limits the economic loss rule, but only in the context of professional negligence actions.  Hofrichter v. Zuckerman & Venditti, P.A., 710 So.2d 127, 129-30 (Fla. 3d DCA 1988) arose out of law partners' fiduciary relationship.  First Equity Corp. v. Watkins, Nos. 98-851, 98-589, 1999 WL 542639, at *1 (Fla. 3d DCA July 28, 1999), it is no longer good law.  See Pacific Harbor Capital, Inc. v. Barnett Banc, N.A., 2:97-CV-416-FTM-24D (SCB), 2000 WL 33992234, at *10, n.10 (M.D. Fla. Mar. 31, 2000).  Furthermore, SFM's own reliance on the Prime Broker Agreement to support its breach of fiduciary claim is further evidence that the parties' rights and obligations are governed by contract. (Response, 8 n.6) (citing Prime Broker Agreement for the proposition that Banc of America is the agent of its customer as to carrying out the customer's instructions with regard to the purchase, sale and settlement of securities).[9]  Repleading will not enable SFM to surmount the hurdles of the economic loss rule or the language of the Prime Broker Agreement.

---

[9] There are no allegations that Banc of America failed to execute trades as directed.

16

Accordingly, the claims for constructive fraud and breach of fiduciary duty are dismissed with prejudice.

### III.  CONCLUSION

THE COURT, having considered the parties written submissions and being otherwise fully advised, hereby

ORDERS AND ADJUDGES that Banc of America's Motion to Dismiss, filed September 1, 2006 **[DE 16]** is GRANTED.  The above-styled case is hereby DISMISSED WITH PREJUDICE.  The Clerk of Court shall CLOSE this case and DENY any pending motions as MOOT.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 9th day of February, 2007.

Copies provided:  
all parties and counsel of record

Kenneth L. Ryskamp  
KENNETH L. RYSKAMP  
UNITED STATES DISTRICT JUDGE